IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SNAC LITE LLC,            )
                            )
      Plaintiff,          )
v.                       )     Case No.:  2:14-CV-1695-RDP
                            )
NUTS 'N MORE LLC,     )
                            )
      Defendant.     )

**PLAINTIFF SNAC LITE, LLC'S BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

I.      **Introduction**................................................................1

II.     Statement of facts..........................................................2

III.    Summary Judgment Standard ......................................3

IV.    Argument ......................................................................5

       A.  The Lanham Act........................................................5

     B. Standing Under the Lanham Act. ...............................7

       a.  A false or misleading statement of fact...................10

       b.  Used in a Commercial Advertising or Promotion.....12

       c.  Deceives or is Likely to Deceive a Consumer...........12

       d.  In Interstate Commerce..........................................15

       e.  Competitive or Commercial Injury..........................15

V.     Conclusion...................................................................19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SNAC LITE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 2:14-CV-1695-RDP |
| | ) | |
| NUTS 'N MORE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF SNAC LITE, LLC'S BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION

Snac Lite LLC, produces, markets and sells Naturally More Peanut Butter and various nut butter related products, including but not limited to peanut butter and almond butter. Nuts 'N More, is one of Snac Lite's primary competitor in the high protein butter market, and also markets and sells peanut and almond butters. Consumers are attracted to these products for their particular health interests, specifically to this lawsuit, due to their high concentration of protein. For example, an average jar of Peanut Butter may cost three ($3.00) dollars, with 5 grams of protein, whereas Snac Lite and Nuts 'N More products range from eight ($8.00) to twelve ($12.00) dollars, with higher protein content. Because of their specialty, these butters are priced well over the average consumer jar of peanut butter, and are marketed to an exclusive consumer. The discrete market both these nut butters operate in appeal to consumers. It is the contention of the Plaintiff, Snac Lite LLC, that Defendant Nuts 'N More unfairly marketed their product to these consumers by falsely identifying the true contents of their products; particularly by claiming their protein content was far greater than it was or could be. In addition to making this claim, discovery has determined that Nuts 'N More made no effort to test their product to

validate their claims. During the year 2013, NNM had over $5 million dollars in sales and <u>did not conduct one test</u> to ensure the validity of their protein claims. This deception obviously negatively impacted the sales of the Plaintiff. Snac Lite is therefore pursuing a claim under the Lanham Act as a competitor and is pursuing all allowable remedies.

## II.    STATEMENT OF FACTS

1.    Tim Petro, founder and CEO of Snac Lite LLC based in Birmingham Al, began producing peanut butter in 2002[1], and began producing specialty high protein peanut butter in approximately 2014[2].

2.    Petro modeled his production of Naturally More peanut butter around the demand from consumers interested in health, specifically, high protein consumption[3].

3.    Petro spent years on his formula for high protein peanut butter in order to develop the highest protein content available, coupled with a butter that was spreadable for consumers as well as tasty. The highest protein content Petro's product could maintain, concerning taste and applicability is approximately 8 to 9 grams.[4]

4.    Shortly after Petro's production, he was introduced to the company Nuts 'N More through Petro's distributor.[5] In the same time period, Nuts 'N More appeared on the popular TV show "Shark Tank" on March 1, 2013, espousing their claims of 14 grams of protein for peanut and almond butters. The high protein content was particularly attractive to Mark Cuban, who ultimately invested in the company.[6]

---

[1] Deposition of Tim Petro, p.9
[2] Deposition of Tim Petro, p. 13
[3] Deposition of Tim Petro, p50-52
[4] Deposition of Tim Petro, p37-38;
[5] Deposition of Tim Petro, page 56
[6] NBC's "Shark Tank" Episode, March 1, 2013

5.      Nuts 'N More is produced under a similar concept of high protein content as Naturally More, paired with taste and spread-ability. Having just finished testing and development of his own product, Petro was suspect of Nuts 'N More's claim of 14 grams of protein per serving[7].

6.      Consequently, Petro sent a sample of Nuts 'N More peanut butter product through Sunland to be tested by the Deibel Lab in March 2013. The results of the test revealed the protein content to be far lower than the 14 grams as advertised by Nuts 'N More, resulting in 8 grams per serving[8].

7.      In or around the same time, a complaint was filed December 24, 2013 on behalf of consumers against Nuts 'N More in California District Court[9] alleging the same deceptive claims as Petro found. The plaintiffs in California determined the product does not have the advertised protein content as purported on the label of the jar, as well as promotional material for Nuts 'N More's various products.

8.      It is interesting to note, at this point, Nuts 'N More agrees to remedy all consumers injured as the lawsuit alleges who purchased their product by issuing reimbursement coupons for a new jar of peanut butter[10]. This remedy was limited to only California; not the other 49 states[11].

9.      Finally, on September 9th, 2014, Plaintiff Tim Petro filed suit in this Court alleging violations of the Lanham Act. Particularly, Nuts 'N More mislead and mislabeled the protein content on all of their products.

---

[7] Deposition of Tim Petro, p 65
[8] Exhibit 1: Deibel Lab Results
[9] Exhibit 2: California Class Action Complaint
[10] Exhibit 3: Letter to Consumers
[11] Deposition of Neil Cameron, November 10, 2015 page 31; lines 2-22., page 70-71.

10.     At no time has Defendant Nuts 'N More PRODUCED ANY LABORATORY EVIDENCE SHOWING THIS PRODUCT HAD ANYWHERE NEAR THEIR CLAIM THAT THE PROUDCT CONTAINED 14 GRAMS OF PROTEIN.   As a part of this lawsuit, Plaintiff has sent the Defendant's product to be tested by independent, professional third party laboratories numerous times.   These laboratory tests show the protein levels of Defendants' products range from 6 grams to 10 grams of protein, well under the Defendant's claim[12]. Flavored Almond butters were found to be even lower in protein content.

11. From 2009-2013, Nuts 'N More sales rose to over $5 million dollars per year[13], all while the products were never tested[14].

12.     Defendants acknowledge they have never had their product tested for accuracy after initial assumptions of fact[15], did not conduct product quality control checks of their products in spite of business customs and standards of the industry for years,[16] and fail to acknowledge the importance of authenticity in marketing to a consumer. Their gross negligence an intentional conduct in supplying their products into the stream of commerce without testing, and their mendacities concerning the contents of the products, coupled with their indifference to the consumer are the basis of this lawsuit.

## III.     SUMMARY JUDGEMENT STANDARD

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any

---

[12] Exhibit 4: Spreadsheet of Lab Results
[13] [13] Deposition of Neil Cameron, November 10,2015, page 68, line 25.
[14] Deposition of Peter Ferreira, page 41; Deposition of Dennis Iannotti, page 16, 19; Deposition of Neil Cameron, November 10, 2015, page 20.Deposition of Peter Ferreira, page 41; Deposition of Dennis Iannotti, page 19, 22, Deposition of Neil Cameron November 10, 2015, page 20, line 6-9. Deposition of Peter Ferreira, page 42; Deposition of Dennis Iannotti, page 25-27; Deposition
[15] Deposition of Neil Cameron, November 10, 2015 page 28-29, lines 21-25; 1-7; page 31 lines 2-22.; page 33-35.
[16] Deposition of Neil Cameron; page 61, lines 2-9;

material fact and that the moving party is entitled t judgment as a matter of law. Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. N. Crossarm Co., 357cF.3d 1256, 1259-60 (11th Cir. 2004)(internal citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Id. at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). There are no issues of fact currently in this matter appropriate for this Court to decide, other than damages. Consequently, again, the Plaintiffs seek this Court to grant their Motion for Summary Judgement, but preserve damages to be determined by the Court.

## IV.    Argument

### A.    The Lanham Act

"Under the Lanham Act, any person that uses a 'false description or representation' that is 'in connection with any goods' is liable to another private individual 'who believes he is or is likely to be damaged by the use of any such false description of representation.'" Pom Wonderful LLC

v. Ocean Spray Cranberries, Inc., 642 F. Supp. 2d 1112, 1117 (C.D. Cal. 2009); see Jack Russell

Terrier Network of Northern California v. American Kennel Club. Inc., 407 F. 3d 1027, 1036 (0th

Cir. 2005); 15 U.S.C. § 1125(a).[17] The facts clearly support the contention that Petro

immediately felt damaged when he realized the falsity of his competitor's claims. Indeed, the

Lanham Act is designed to protect commercial interests from a competitor's false advertising

and to protect the business community from having its reputation and good will diverted. See

phoenix v. McDonald's Corp., 489 F.3d 1156, 1168 (11th Cir. 2007); see also Schreing-Plough

Healthcare Products, Inc V Schwarz Pharm., Inc., 586 F. 3d 500, 512 (7th Cir. 2009) ("The

purpose of the false-advertising provisions of the Lanham Act is to protect sellers from having

their customers lured assay from them by deceptive ads or labels, or other promotional

materials."). To establish as false advertising claim under the Lanham Act, a plaintiff must

demonstrate that the challenged description or representation is false. Gonzalez v. Allstate Ins.

Co., 2005 WL 5891935, *5 (C.D. Cal. Aug. 2, 2005). "Falsity may be established by proving

that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is

literally true, it is likely to deceive or confuse consumers."[18] Lipton v. Nature Co., 71 F.3d 464,

---

[17] Section 43(a) of the Lanham Act as amended, states: (1) Any person who, on or in connection with any goods or services, or any container for goods, used in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which- (A) is likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association or such person with another person, or as to the origin, sponsorship, or approval of his goods, services, or commercial activities by another person, or 9B) in commercial advertising or promotion, misrepresents the nature , characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. §1125(a)

[18]  Some courts frame the requirements for establishing a false advertising claim under § 43(a) of the Lanham Act differently, requiring that plaintiffs show: (1) a false statement or fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has
the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the good will associated with its products. Del Webb Cmty., Inc.,v. Partington, 2009 WL 3053709 (D. Nev. Sept. 18, 2009) (citing Southland Sod Farms v. Stover

474 (2d Cir. 1995); see Southland Sod Farms, 108 F.3d 1134, 1139 (9th Cir. 1997) ("[t]o demonstrate falsity within the meaning of the Lanham Act, a plaintiff must show that an advertisement is literally false, ... or that the statement was literally true but likely to mislead or confuse consumers.");[19] see Mutual Pharm. Co. v. Watson Pharm., Inc. ("Mut. Pharm. Co. II"), 2009 WL 3401117 (C.D. Cal. Oct. 19, 2009). "[T]he Lanham Act encompasses more than blatant falsehoods. It embraces 'innuendo, indirect intimations, and ambiguous suggestions' evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." The Proctor & Gamble Co. v. Chesebrough-Pond's Inc., 747 F.2d 114, 119 (2d Cir. 1984) (internal citations omitted); see Cytosport, Inc., v. Nature's Best, Inc. ("Cytosport"), 2007 WL 1345379, *1 (E.D. Cal. May 8, 2007); see Cottrell, Ltd. v. Biotrol Int'l, Inc.("Cottrell"), 191 F.3d 1248, 1252 (10th Cir. 1999);see also Pfizer, Inc. v. Miles, Inc., 868 F. Supp.437, 442 (D. Conn. 1994) (holding that [the Lanham Act] embraces false impressions, innuendo, and ambiguous suggestions). Moreover, the Lanham Act covers only "commercial advertising or promotion." Schwarz Pharm., Inc. v. Breckenridge Pharm., Inc., 388 F. Supp. 2d 967, 981 (E.D.Wisconsin 2005) (citing Sanderson v. Culligan Intern, Co., 415 F.3d 620, 624 (7th Cir. 2005) and First Health Group Corp. v. BCE Emergis Corp., 269 F.3d 800, 803 (7th Cir 2001)).

### B.  Standing under the Lanham Act

---

Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)); see CKE Rest. v. Jack In The Box, Inc.,494 F. Supp. 2d 1139, 1143-1148 (C.D. Cal. 2007). Either way, Naturally More must show that Nuts N' More made false or misleading advertisements, and that Nuts 'N More's advertisements deceived a substantial segment of its audience. Thus, regardless of how the Court frames the test, the principal two requirements for establishing liability under § 43(a) of the Lanham Act remain the same.

[19]  "To constitute commercial advertising or promotion, a statement of fact must be:
(1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotions,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."Mut. Pharm. Co. II, 2009 WL 3401117 at *3 (citing Coastal Abstract Services, Inc. v. First American Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999)).

Generally, a legal interest sufficient to create standing "must consist of obtaining compensation for, or preventing, the violation of a legally protected right." Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 772, 120 S. Ct. 1858, 1862, 146 L. Ed. 2d 836 (2000) (citing Lujan, 504 U.S. at 560—61, 112 S. Ct. at 2130). Congress, however, may "define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." Id. at 773, 120 S. Ct. at 1862 (citing Warth, 422 U.S. at 500, 95 S. Ct. at 2208).

Thus, where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights. Such rights do not need to be expressly delineated in the statute, but may be inferred from conduct prohibited by it. Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251, 2015 U.S. App. LEXIS 3630, *8-9, 91 Fed. R. Serv. 3d (Callaghan) 364, 25 Fla. L. Weekly Fed. C 968, 61 Comm. Reg. (P & F) 1744 (11th Cir. Fla. 2015) Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., in which the Eleventh Circuit reiterated the Supreme Court's prior statement that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute," is binding precedent in this Circuit on the question of whether statutory damages alone are sufficient to confer standing. 781 F.3d 1245, 1251 (11th Cir. 2015).

Standing in this matter has been previously established and discussed in Plaintiff's responsive submission to Exhibit B of the Court's Order. To refresh, to have standing under the Lanham Act, a plaintiff's interests must "fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (internal quotations omitted). The Court explained that "the test is not especially demanding"

8

and that "the benefit of any doubt goes to the plaintiff" and "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id.* at 1389 (internal quotations omitted).

The Lanham Act includes a detailed statement of the purposes of the statute. As noted by the *Lexmark* court, "a typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Id., quoting* Section 45 of the Lanham Act, 15 U.S.C. § 1127. Based on this legislative purpose, the Court held that "to come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. Plaintiff made such allegations in paragraphs 17 through 20 of the Complaint.

Secondly, the *Lexmark* court held that Lanham Act plaintiffs must allege their injuries to have been proximately caused by the defendant's violations of the statute. *Id.* The Court noted that a plaintiff "can be directly injured by a misrepresentation even where a third party, and not the plaintiff . . . relied on it." *Id.* at 1391 (internal quotations omitted). Thus, the Court held that "a plaintiff suing under §1125(a) must ordinarily show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Again, Plaintiff's Complaint contains these averments in paragraphs 16-22.

As the *Lexmark* court noted, inability to plead an exact calculation of damages, or eventually even proving such damages at trial, is not grounds for denying standing to bring a claim under the Lanham Act: "[e]ven when a plaintiff cannot quantify its losses with sufficient

certainty to recover damages, it still may be entitled to injunctive relief under §1161(a) . . . or disgorgement of the defendant's ill-gotten profits under 1117(a)." *Id.* at 1392.

In this case, the plaintiffs have employed accountant, Steven Lovoy as an expert in determining a proper calculation of damages. Mr. Lovoy identified patterns in the market share of high protein peanut and almond butters, causes and reactions of these patterns, and was able to identify Defendant Nuts 'N More is the attributing factor ███████████████████ ██████ ██████ for Plaintiff SnacLite in the market share.[21] In addition, Expert Dr. Robert A. Robicheaux explains the crux of the damages in this case:

> "All peanut butter have some protein in them by definition,[...] but these products are positioned to sell to that segment of consumers who are willing to pay a premium price to get an enhanced product. And one of the important enhancements is protein; it's not the only one. But what made protein so important in this particular situation is everybody could claim similar amounts of sugars and salts and omega and cholesterol or calories but these guys were uniquely differentiating themselves on the basis of high protein. And so they are in competition with Snac Lite, which also targets that customer market…But sitting right beside them with their claim of what they have got in their product was a competitor who came in and said we have fourteen grams. Well, that's significantly more. It's a big differential advantage."[22]

Clearly, the facts and the circumstances making up the issue in this case fully satisfy the requirements for standing.

### a. A false or misleading statement of fact

---

[20] Deposition of Steve Lovoy, page 19, line 18-19
[21] Deposition of Steve Lovoy, page 87-88.
[22] Deposition of Dr. Robert A. Robicheaux, page 89, lines 3-23

The First element of the Lanham Act for Competitors is easily satisfied under the facts creating the issue in this case. It is intuitively obvious the label used by the Defendant emphasizes the alleged protein content of the product based on the size and placement of the claim within the label as a whole[23]. It has also been proven the alleged protein content is false, averaging a protein content of approximately 6-10 grams per serving, a significant difference from the 14 grams the Defendant purports.[24] While the Defendant claims the previously stated protein content, it should be emphasized again there is no testing or significant evidence proving their position. The alleged formula used to calculate the original protein content has never been produced, nor have any testing of Defendant's product[25]. In fact, the three principals of the company, Peter Ferreira, Dennis Iannotti, and Neil Cameron have all testified to there being one test that was run early in the company's development, but they do not recall who ran the test[26], they do not remember exactly when it was done[27], and they do not remember anything about the results except it yielded a high protein content[28]. Further, this alleged test result has never been produced[29]. There cannot be a clearer case of false description and/or representation than in this circumstance. There is not a single sheet of paper that supports the Defendant's claim their product contains anywhere near the purported protein content.

[23] Labels, reflecting both 12 and 14 grams of protein, Exhibit 4

[24] Testing of product from 1. IEH Laboratories; 2.Avomeen Analytical Services; 3.Certified Laboratories; and 4.Deibel Laboratories

[25] Deposition of Neil Cameron, November 10, 2015, page 19, line 20-22.; page 20.

[26] Deposition of Peter Ferreira, page 41; Deposition of Dennis Iannotti, page 16, 19; Deposition of Neil Cameron, November 10, 2015, page 20.

[27] Deposition of Peter Ferreira, page 41; Deposition of Dennis Iannotti, page 19, 22, Deposition of Neil Cameron November 10, 2015, page 20, line 6-9.

[28] Deposition of Peter Ferreira, page 42; Deposition of Dennis Iannotti, page 25-27; Deposition of Neil Cameron November 10, 2015, page 20.

[29] Deposition of Neil Cameron, November 10, 2015, page 20.

The Defendant's own expert Dr. Michael R. Solomon, in his deposition and in his previous publications has discussed how competing with a manufacturer of a product that's not honest, that can cause you to be at a disadvantage, contributing to a loss of sales[30].

> Q.     If you're competing - I think I read this in the other books you wrote.  If you are competing with a manufacturer of a product that's not honest, that can cause you to be at a disadvantage, can't it?
>
> A.     Yes
>
> Q.     And you might lose sales from a dishonest competitor, mightn't you?
>
> A.     That, depending on the situation can be one factor in addition to many others, yes.

Deposition of Michael R. Solomon, pp 80-81, lines 17-25, 1-2.

The falsity of the Defendant's claim has both been proven by the Plaintiff, as well as substantiated the Defendant's expert's own testimony, thereby defaulting to veracity of the Plaintiff's claim. Thus, this element Plaintiff must satisfy is sufficiently realized under the Lanham Act.

### b.  Used in a Commercial Advertising or Promotion

As stated in the previous argument, the claims made by Defendant are blatantly purported to customers on every label of their product in outstanding, block print[31]. Further, each label for each jar of high protein butter is produced with the intent of attracting sales/being sold. Therefore, the second element for the Plaintiff's claim under the Lanham act is satisfied.

### c.  Deceives or is Likely to Deceive a Consumer

Under the Lanham Act,  "in order to recover  damages,  .  .  .  the  plaintiff  must demonstrate that it has been damaged by actual consumer reliance on the misleading

---

[30] Deposition of Dr. Michael R. Solomon, page 80-81.
[31] Nuts 'N More Label, Exhibit 5

statements." Emerging Material Tech., Inc. v. RubiconTech., Inc., 2009 WL 5064349, *4 (N.D. Ill. Dec. 14, 2009). Here, the statements-at-issue, namely Nuts N' More's labeling, advertising, and marketing, are alleged to be literally false, and misleading in context.

Competitors who manufacture or distribute products have detailed knowledge regarding how consumers rely upon certain sales and marketing strategies. Their awareness of unfair competition practices may be far more immediate and accurate than that of agency rule makers and regulators. Lanham Act suits draw upon this market expertise by empowering private parties to sue competitors to protect their interests on a case-by-case basis. POM WONDERFUL LLC v. COCA-COLA CO. (Slip op. 11-12).

This understanding is supported by the Defendant's own expert. Dr. Michael R. Solomon. In his textbook explaining ethical business practices, Solomon states:

> "Regardless of whether they do it intentionally some marketers do violates their bonds of trust with consumers. In some cases these actions are actually illegal as when a manufacturer mislabels the contents of a package."

Further, in his deposition, Dr. Solomon states "We assume the labels reflect the best knowledge that's available[32].

A court will presume that a literally false advertisement deceives in a material way. The label produced by Defendant Nuts 'N More obviously includes the factually false protein content, as can be demonstrated by even a peripheral glance at the label. It is intuitive the false statements made by the company, were introduced with the intent to lure the customer, as labeling is an essential factor in luring consumers into purchasing a product.

It should be noted some courts have held that a plaintiff need not show extrinsic evidence of materiality where defendant's Lanham Act violation is willful or in bad faith. If [the defendant

---

[32] Deposition of Michael R. Solomon, page 53, line 52-53

has] intentionally misled consumers, [the court will presume that] consumers were in fact deceived and [the defendant] would have the burden of demonstrating otherwise." The William H. Morris Co. v. Group W, Inc.,66 F.3d 255, 258 (9th Cir. 1995); see Del Webb, 2009 WL 3053709 at *13; see also Novartis Consumer Health, Inc. v. Johnson & Johnson, 290 F.3d 578, 594 (3d Cir. 2002).    Indeed, where a defendant "intentionally misl[eads]" consumers, by "deliberate conduct of egregious nature, "courts may presume that consumers have been deceived. William H. Morris Co., 66 F. 3d at 258;see also Gonzalez v. Allstate Ins. Co., 2005 WL 5891935, *10 (C.D. Cal. Aug. 2, 2005).Accordingly, even if Snac Lite cannot establish by a preponderance of evidence that consumers were actually deceived by Nuts N' More's factually inaccurate and misleading statements, if Snac Lite can establish willful misconduct by Nuts N' More, then the Court may presume that consumers have been deceived

On this point, Plaintiff emphasizes Defendants have failed to test their product before producing and introducing the product into the stream of commerce[33], have failed to provide evidence to dispute the factual findings of the Plaintiffs,  and have patently disregarded ethical standards of good business.



[34] Exhibit 6, an email chain between Dennis Iannotti and Neil Cameron dated November 16-18, 2013

███████████████████████████████████████████
████████

### d. In interstate Commerce

As of November 10th, 2015, Neil Cameron, speaking on behalf of the company, projected ██████████████████████████████████████ ████████. Particularly, their products sell in GNC, a national specialty store that also sells Plaintiff's high protein butter. This element is satisfied at minimum by the inclusions of their product on a national level, but especially established when considered with the direct competition of the Plaintiff in this store on a national scale.

### e. Competitive or Commercial Injury

To recover damages under the Lanham Act, a plaintiff must show actual injury from the challenged advertisement. In *Lexmark Intl., Inc. v. Static Control Components Inc.*, 572 U.S. ___ (2014), the Court, in a unanimous decision, invalidated various tests used by the courts of appeals when deciding whether a party has standing to bring a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a). Instead, the Supreme Court established a new test requiring a plaintiff suing for false advertising under 15 U.S.C. § 1125(a) to (1) allege an injury to a commercial interest in reputation or sales; and (2) show that such injury was proximately caused by defendant's misrepresentations.

With regard to the first prong, the Court noted that the Lanham Act itself provides a detailed statement of the statute's purposes in 15 U.S.C. § 1127, including the Act's goal to protect persons engaged in commerce against unfair competition. Explaining that under common law unfair competition was associated with injuries to business reputation as well as to present and future sales, the Court concluded that "a plaintiff must allege an injury to a commercial

---

[35] Deposition of Neil Cameron, November 10,2015, page 68-69 lines 25, 1-3

interest in reputation or sales" to "come within the zone of interests" in a suit for false advertising under 15 U.S.C. § 1125(a).

As to the second prong, the Supreme Court held that a plaintiff suing under 15 U.S.C. § 1125(a) "must show economic or reputational injury flowing directly from the deception" triggered by the defendant's advertising, which "occurs when deception of consumers causes them to withhold trade from the plaintiff."

Applying this test, the Supreme Court held that Static Control came within the "zone of interest" of the Lanham Act because Static Control's alleged injuries (lost sales and damages to business reputation) were precisely the types of commercial interests protected by the Lanham Act. The Court also found that Static Control sufficiently alleged that its injuries were proximately caused by Lexmark's false statements for two reasons: (1) Lexmark's disparaging comments expressly targeted Static Control's products; and (2) Lexmark's allegedly false statement directed at remanufactures necessarily injured Static Control because Static Control's microchips were necessary for, and had no other use than, being installed in refurbished Lexmark cartridges.

The Lanham Act, confers broad discretion upon the district court to fashion the assessment of damages "according to the circumstances of the case," 15 U.S.C.A. § 1117, and it is the character of the conduct surrounding the infringement that is relevant. Champion Spark Plug v. Sanders, 331 U.S. 125, 130, 67 S. Ct. 1136, 1139, 91 L. Ed. 1386 (1947). Thus, it is the district court's assessment of the particular conduct involved that governs the exercise of its discretion in fixing an appropriate remedy. The district court has the statutory authority to "enter judgment for such sum as the court [783] shall find to be just, according to the circumstances of the case." 15 U.S.C.A. § 1117. As we held, when this case was before us initially, "all monetary

awards under Section 1117 are 'subject to the principles of equity,' [and] contrary to the assertions of both parties, no hard and fast rules dictate the form or quantum of relief." Burger King, 710 F.2d at 1495 n. 11. Based upon the proper standard of review of the district court's discretion, the decision of the district court as to these matters is due to be affirmed. Burger King Corp. v. Mason, 855 F.2d 779, 782-783, 1988 U.S. App. LEXIS 12801, *9-10, 8 U.S.P.Q.2D (BNA) 1263, 1265 (11th Cir. Fla. 1988)

The Supreme Court began its analysis in Lexmark by reciting Article III's well-known constitutional standing requirement: "The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Id. at 1386 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Constitutional standing not being disputed in Lexmark, the Supreme Court then turned to formulate a second, two-pronged standing inquiry—which the Court labeled "statutory standing"—to apply when analyzing any federal statute, including the Lanham Act. Id. at 1386-91.Under statutory standing, the plaintiff must first fall within the "zone of interests" of the statute or statutory provision asserted. Id. at 1388. The determination of whether a plaintiff falls within a statute's zone of interests is generally "a straightforward question of statutory interpretation," requiring courts to look toward the statute's purpose where that purpose is unambiguous. See id.

Upon reading the purpose of the Lanham Act, the Supreme Court identified § 43(a)'s zone of interests as protecting persons engaged in commerce. Id. at 1389-90. The Lexmark Court specifically drew a distinction between those who have legitimate commercial interests at stake and others, such as consumers, who have merely been "hoodwinked" by an infringer's conduct.

Id. at 1390. While the latter group may have suffered a true injury-in-fact sufficient to satisfy Article III, these plaintiffs fall outside of the Lanham Act's purpose in protecting commercial actors. Id. The Supreme Court therefore concluded that a plaintiff must demonstrate a cognizable "commercial interest in reputation or sales" to fall within § 43(a)'s zone of interests. Id. at 1389-90.

The second prong of statutory standing requires the plaintiff to demonstrate that his injuries were proximately caused by the defendant's wrongful conduct. Id. at 1390. Embodying the centuries-old common law rule, "the proximate-cause require element generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." Id. In the context of claims brought under § 43(a), the Supreme Court opined that "a competitor who is forced out of business by a defendant's false advertising" will generally show proximate cause, but that third parties who suffer injury from the competitor's inability to meet financial obligations because of the defendant's false advertising would fail the proximate cause prong. Id. at 1391. Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, INC., 2015 U.S. Dist. LEXIS 49534 (M.D. Fla. Apr. 15, 2015).

This Court has held that to be eligible for Lanham Act treble damages, the plaintiff must prove that the defendant's conduct was intentional. See <u>Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472 (11th Cir. 1991)</u> (decided in <u>Lanham Act § 32(a)</u> trademark infringement context, but applying the same treble damages provision). Thus, Plaintiff Petro is required to plead intent or knowledge of falsity in order to seek the treble damages remedy, and has adequately proven this cause.

Pursuant to section 1117(a), "in assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."

Accordingly, the plaintiff need only show the defendant's gross sales. Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 586 (5th Cir. 1980). Thereafter, the burden shifts to the defendant to demonstrate that the plaintiff's sales calculations are fallacious. Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985). The defendant also bears the burden of proving any costs that should be deducted from the gross revenue of sales of the goods. Maltina Corp., 613 F.2d at 586. In the Eleventh Circuit, such costs may only be deducted when they are "actually related" to the sale of the [...] product. Id.; Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc., 2003 U.S. Dist. LEXIS 8788, *58-59, 2003 WL 22331254 (N.D. Ga. May 9, 2003)see also Burger King Corp. v. Pilgrim's Pride Corp., 934 F. Supp. 425, 426 (S.D. Fla. 1996); [59] Playboy Enters. v. P.K. Sorren Exp. Co., 546 F. Supp. 987, 998 (S.D. Fla. 1982).

The Plaintiff has met the burden at issue; One of the principals of the Defendant Business, Neil Cameron as an expert for the Defendant has actually testified already to the Defendant's sales. During his deposition on November10, 2015, Cameron stated that in 2013, the



## V.    Conclusion

In conclusion, Plaintiff has established they have standing under the Lanham Act as follows:

1.    Defendant made false and misleading statements of fact;

2.    Those false and misleading statements were used in advertising and promotion of their product;

---

[36] Deposition of Neil Cameron, November 10,2015, page 68, line 10.
[37] Deposition of Neil Cameron, November 10,2015, page 68, line 20-21.
[38] Deposition of Neil Cameron, November 10,2015, page 68, line 25.
[39] Deposition of Neil Cameron, November 10,2015, page 69, lines 2-5.

3.     Those statements deceived or were likely to deceive the consumer;

4.     Those statement caused competitive and commercial injury to the Plaintiff;

5.     There is no doubt that Defendant was engaged in interstate commerce.

For those reasons, the only remaining issue to be determined, are the damages due to Plaintiff because of Defendant's wrongful conduct.

The Plaintiff has satisfactorily proven there is no genuine issue of material fact for the Court to decide as a basis of the issue, as the Defendants have made no genuine effort to dispute the Plaintiff's assessments with substantial evidence. The falsity of the protein content claims have been determined through multiple testing to be false, and that the falsity of the claims have damaged the Plaintiff. Further, the Plaintiff has shown the actions by the Defendant have been willful and intentional.

WHEREFORE, Plaintiff asks this Court to grant the Plaintiff's Motion for Summary Judgment, preserving damages to be determined at a later time.

Dated this 1st day of April, 2016.


Respectfully submitted,

*/s/ J. Allen Schreiber*
J. Allen Schreiber (ASB-2540-R76J)

*/s/ Robert E. Norton*
Robert E. Norton (ASB-6568-E59N)

**OF COUNSEL:**
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, AL 35243
Tel: 205-930-9091
Fax: 205-930-9054
aschreiber@burkeharvey.com
rnorton@burkeharvey.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2016, the foregoing was filed **with the Clerk of Court in compliance with Section III.A** of the Administrative Procedures. A true and correct copy will be served on counsel of record **via hand-delivery** to:

Alan D. Mathis, Esq.
Butler Snow LLP
One Federal Place, Suite 100
1819 5th Avenue North
Birmingham, AL 35203

and **via U. S. Mail** to:

Nicole L. Williams, Esq.
Thompson & Knight, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201-2533

/s/ J. Allen Schreiber
**OF COUNSEL**